IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:21-CR-149-RLJ-DCP |
| DARTAVIA DEVON SMITH-WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Dartavia Devon Smith-Wilson's Motion to Suppress Identification [Doc. 35] and two motions to suppress evidence seized pursuant to a state search warrant executed at 1423 Dutch Valley Drive, Knoxville, TN ("Dutch Valley residence")—one based upon staleness of the affidavit [Doc. 36] and the other based upon lack of nexus [Doc. 37]. The Government filed its response in opposition to the motion to suppress identification [Doc. 41] as well as a consolidated response in opposition to Defendant's motions requesting suppression of the evidence obtained during the execution of the search warrant [Doc. 38]. On April 20, 2022, the Court held a hearing on Defendant's motions. Assistant United States Attorney ("AUSA") Anne-Marie Svolto appeared on behalf of the Government. Assistant Federal Defender Nakeisha Jackson represented Defendant Smith-Wilson, who was also present. At the conclusion of the hearing, the Court took the matter under advisement and requested supplemental briefing addressing the appropriate remedy if the Court should suppress the identification. Both parties timely submitted a supplemental post-hearing brief [Docs. 47, 48].

After reviewing the parties' briefs and arguments, the search warrant affidavit,[1] and the relevant legal authorities, the Court recommends that Defendant's Motion to Suppress Identification [Doc. 35] be denied as moot and that Defendant's motions to suppress based on staleness [Doc. 36] and lack of nexus [Doc. 37] be denied.

## I.  BACKGROUND

On November 17, 2021, Defendant was charged in an indictment with conspiracy to distribute and possess with intent to distribute 100 grams or more of a substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) (Count One); two counts of distribution of a substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C § 2 (Counts Two and Four); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C § 924(c)(1)(A)(Count Six) [Doc. 17].

As explained in the Affidavit of Drug Enforcement Administration ("DEA") Task Force Officer Jacob W. Wilson ("TFO Wilson") ("Affidavit"), the investigation, which ultimately led to the Indictment, began in May 2021[2] [Doc. 43 at 12].  At that time, the Knoxville Police Department

_____

[1] At the suppression hearing, Defendant sought to introduce the handwritten notes of Task Force Officer Jacob Wilson [Exh. 1] and a DEA-6 Report of Investigation from June 4, 2021 [Exh. 2].  The Court accepted these items for review.  For the reasons stated in the analysis below, the Court finds these exhibits are not appropriately considered.

[2] The factual information is summarized from the Affidavit, which was submitted in support of the Application of the State of Tennessee for an Order Authorizing the Search of the Residence Located at 1423 Dutch Valley Drive, Knoxville, TN 37918 on September 15, 2021 [Doc. 37-2, 43].  The Court notes that Defendant filed a copy of the Affidavit as Exhibit 2 to his Motion to Suppress and Memorandum in Support [Doc. 37-2] and that the Government requested to seal the same Affidavit as an exhibit to its consolidated response to Defendant's motions to suppress, citing the sensitive nature of certain material such as phone and license plate numbers as well as that the Affidavit was placed under seal by the issuing state court judge [Doc. 39].  The Court granted the Government's motion to seal [Doc. 40], and the Affidavit was filed as a sealed

("KPD"), the DEA, and the Campbell County Sheriff's Office ("CCSO") began a joint investigation of a drug trafficking organization ("DTO") transporting heroin from Detroit, Michigan, to Knoxville, Tennessee, and distributing it throughout East Tennessee [*Id.*].  The investigation was prompted by a source of information indicating that Defendant and Codefendant Deondre Elie ("Elie") were involved in the transportation and distribution activities, that they stored the heroin at the Dutch Valley residence, and that they met customers at various public locations near that residence [*Id.* at 12-13].  Later that same month, a KPD confidential source ("CS-1") confirmed the earlier information regarding the DTO's distribution of heroin from the Dutch Valley residence and agreed to make controlled purchases from DTO members [*Id.* at 13].

The Affidavit details that law enforcement officers then set up a series of controlled purchases, including one occurring on May 28, 2021.  On that date, the Affidavit reveals that DEA and KPD met with CS-1 to conduct the first controlled buy [*Id.* at 14].  CS-1 made a recorded call to Elie to set up the heroin purchase.  Elie advised that he was out of town but would send another individual to complete the deal with CS-1 [*Id.*].  Investigators then provided CS-1 with government funds to make the purchase, and CS-1 placed a second call to Elie, indicating CS-1 was ready to complete the deal, and Elie directed CS-1 to the Rite Stop Food Mart at 441 Dutch Valley Drive

exhibit [Doc. 43].  The Court will cite to the sealed Affidavit [Doc. 43] but notes that the parties discussed the pertinent details of the Affidavit in their briefing and arguments in open court, so the Court discerns no need to file the instant Report and Recommendation under seal.

Defendant also attached the Affidavit of TFO Wilson, dated September 3, 2021, to its Motion to Suppress [Doc. 37-1], explaining that it was submitted in support of the first search warrant for the Dutch Valley residence, which was returned unserved after the five-day limit to execute expired, and that the subsequent September 15, 2021 Affidavit contained no new information on Defendant [Doc. 37 at 2].

("Rite Stop")[3] as the location for the transaction [*Id.*]. Investigators provided CS-1 with an audio and video recording device and followed CS-1 to the Rite Stop [*Id.* at 15]. After arriving at the Rite Stop, CS-1 received a call from Elie stating that a courier would arrive at that location in approximately five minutes [*Id.*]. Shortly thereafter, investigators observed Defendant exit the Dutch Valley residence, enter the driver's seat of a white Kia Optima, and arrive at the Rite Stop approximately two minutes later [*Id.*]. There, CS-1 got into the front passenger seat of the Optima and met briefly with Defendant before returning to CS-1's own vehicle [*Id.*]. Defendant was observed exiting the Rite Stop parking lot and returning to the Dutch Valley residence [*Id.*].

Shortly after the transaction took place, CS-1 met with the investigators and told them that the government funds were provided to Defendant in exchange for a quantity of suspected heroin, which CS-1 turned over to the investigators [*Id.*]. CS-1 stated that Defendant was the only occupant of the Optima, and when agents presented CS-1 with a copy of Defendant's Tennessee driver's license photograph, CS-1 identified Defendant as the individual with whom CS-1 conducted the transaction [*Id.*].

The Affidavit goes on to detail two additional controlled purchases by CS-1 [*Id.* at 15-17]. The second controlled purchase by CS-1 occurred on June 11, 2021 [*Id.* at 15]. CS-1 contacted Elie by telephone to request a purchase of heroin, and Elie agreed to complete the deal, instructing CS-1 to meet him at the Rite Stop. [*Id.* at 16]. After providing CS-1 with government funds and recording equipment, agents followed CS-1 to the Rite Stop [*Id.*]. After CS-1 placed a call to Elie advising of arrival at the location, Elie responded that he was headed to the Rite Stop as well, and agents observed Elie and an unidentified black male exit the Dutch Valley residence, enter a

---

[3] The Rite Stop is sometimes referred to as the "gas station" and "441 Dutch Valley Dr, Knoxville, TN" in the Affidavit.

4

maroon Nissan Murano, and travel directly to the Rite Stop [*Id*.]. There, agents observed Elie briefly enter and then exit the front passenger seat of CS-1's vehicle before returning to the Murano and leaving the location [*Id*.]. Thereafter, CS-1 turned over a clear, plastic baggie containing a tan, powdery substance believed to be heroin to agents and advised that the government funds were provided to Elie in exchange for the suspected heroin [*Id*.].

The third controlled purchase by CS-1 took place on September 1, 2021 [*Id*.]. The Affidavit details that CS-1 placed a call to Elie for the purchase of a quantity of heroin and that Elie agreed to sell the requested quantity to CS-1, directing CS-1 to meet at the Rite Stop [*Id*.]. Agents provided CS-1 with government funds and a digital recorder and followed CS-1 to the Rite Stop [*Id*. at 17]. Shortly after CS-1's arrival, agents observed Elie exit the Dutch Valley residence, enter the driver's seat of a black 2014 Dodge Charger, and travel to the Rite Stop [*Id*.]. There, agents observed CS-1 briefly enter the front passenger seat of the Charger before exiting and returning to CS-1's vehicle [*Id*.]. CS-1 again met with the investigators, turned over a plastic baggie containing a tan, powdery substance believed to be heroin and the recording equipment, and stated that upon entering Elie's Dodge Charger, Elie had the baggie of suspected heroin in his hand and exchanged it for the government funds [*Id*.]. The Affidavit notes that a NCIC records check revealed that the Tennessee license plate number on Elie's vehicle is assigned to a black 2014 Dodge Charger registered to Elie at the address of the Dutch Valley residence [*Id.* at 17, n. 2].

The Affidavit further recites that on September 10, 2021, CS-2, an informant who had been working for the KPD since July 2021, told TFO Wilson that Defendant and Elie had depleted their supply of heroin and that Elie would be traveling to Detroit, Michigan, in the next few days to replenish the heroin supply [*Id.* at 17-18]. CS-2 contacted TFO Wilson again on September 11,

2021, and informed him that Elie had departed Knoxville to travel to Detroit to purchase more heroin from the source of supply [*Id.* at 18]. CS-2 said Elie would return to the Dutch Valley residence with the heroin on Monday, September 13, 2021 [*Id.*]. Between September 10 and 13, 2021, law enforcement observed no drug trafficking activity at the Dutch Valley residence, and Elie's vehicle was not at the residence during that time [*Id.*]. On September 14, 2021, CS-2 advised TFO Wilson that Elie had returned from Detroit with a new supply of heroin, which would be stored at the Dutch Valley residence [*Id.*].

That same day at approximately 1:44 p.m., agents were conducting surveillance of the Dutch Valley residence when they saw Elie exit the residence, enter the driver's seat of a black GMC Yukon with no displayed license plate, and travel to the Rite Stop [*Id.*]. There, Elie was observed briefly meeting with two unidentified black males in the parking lot [*Id.*]. First, Elie was seen retrieving an item from the front passenger window of his Yukon and handing the item to one male [*Id.*]. A few minutes later, the other male approached Elie at the back of the Yukon, Elie opened the liftgate, and the male reached into the vehicle, removed a small object, and placed it into his pocket [*Id.* at 18-19]. The two males then walked away from Elie's vehicle, and Elie traveled back to the Dutch Valley residence [*Id.* at 19].

In the Affidavit, TFO Wilson noted that both CS-1 and CS-2 were credible and reliable and that information from both had been corroborated by law enforcement [*Id.* at 13, 17]. In addition, he noted his experience and knowledge in conducting investigations of drug trafficking activity, including that it is common for drug distributors to conceal controlled substances in their residences and to only retrieve amounts requested for purchase from the larger quantity of drugs concealed inside the location and then deliver that quantity of drugs to their customers in other locations away from their residences [*Id.* at 20].

6

## II. ANALYSIS

The Court will first address Defendant's motion to suppress identification followed by his two motions to suppress evidence and statements resulting from the search of the Dutch Valley residence.

### A. Suppression of Identification by Confidential Source

Defendant initially moved to suppress CS-1's identification of him from a single photo immediately following the May 28, 2021 controlled purchase, asserting that the identification was unduly suggestive [Doc. 35]. Following the Government's response [Doc. 41] that it would not use the challenged identification at trial, Defendant argued at the suppression hearing and in his post-hearing brief that any information provided by CS-1 and relating to him should be stricken from the Affidavit because this information is the "fruit of the poisonous tree" [Doc. 47 at 10].

Due process may prohibit the admission of evidence where fundamental unfairness would result. *See, e.g.*, U.S. Const. amend. V. ("No person shall be held to answer for a capital or otherwise infamous crime . . . without due process of law . . . ."); *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Thus, Defendant has "a due process right which includes the right to be free from unduly suggestive and unreliable identification procedures." *Gregory v. City of Louisville*, 444 F.3d 725, 746 (6th Cir. 2006), *cert. denied Tarter v. Gregory*, 549 U.S. 1114 (2007); *see also Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000) ("The Due Process Clause prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification"), *cert. denied Carter v. Tennessee*, 479 U.S. 1046 (1987). With regard to suggestive identifications, "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

7

Here, Defendant seeks to suppress CS-1's identification of him as the subject with whom the May 28, 2021 controlled purchase of suspected heroin was conducted. It appears undisputed that CS-1 made the identification of Defendant after being shown a single photograph—Defendant's Tennessee driver's license photograph. [Doc. 43 at 15]. In his motion, Defendant challenges CS-1's pretrial identification under the Due Process Clause, asserting that the identification process was unduly suggestive in that a single photo of the suspect was shown to CS-1 and that the totality of the circumstances resulted in an unreliable identification [Doc. 35 at 2-3]. While not conceding that officers did anything improper, the Government responds that it does not intend to elicit in-court identification from CS-1, should the case go to trial, thus rendering Defendant's motion moot [Doc. 41 at 1].

At the hearing, the Defendant argued that his motion was not moot, asserting that the purported unduly suggestive identification should result in any information relating to Defendant being stricken from the Affidavit. Defendant maintained that the identification was the crux of his inclusion in the Affidavit and urged that any use of the identification be viewed as "fruit of the poisonous tree," [Doc. 47 at 2], extrapolating his argument to ultimately assert that execution of the search warrant based on the "faulty identification" should result in suppression of the evidence seized pursuant to the search warrant and dismissal of the charges. Defendant referenced two exhibits—TFO Wilson's May 28, 2021 investigative notes [Exh. 1] and DEA's June 4, 2021 report detailing the May 28, 2021 controlled purchase [Exh. 2]—in support of his argument that law enforcement had not independently identified Defendant prior to CS-1's identification from Defendant's driver's license photo.

The Government responded that the identification of Defendant by law enforcement officers could be made wholly independent of CS-1's identification of him. The Government

further argued that an improper identification is not grounds to invalidate the search warrant, resulting in the suppression of evidence seized from the Dutch Valley residence as the fruit of the poisonous tree, but rather, is only grounds to exclude the identification at trial, which it already agreed to do. The Government characterized Defendant's new argument as a request for a *Franks* hearing.

In Defendant's post-hearing brief, he contends that he is not seeking review of the Affidavit pursuant to a *Franks* hearing and reiterates his argument that "any use of this identification be viewed as 'fruit of the poisonous tree'" [Doc. 47 at 2]. While he complains that "the government chose not to call any witnesses or law enforcement officers to [the suppression] hearing," and "[a]s a result, the *Biggers* factors[4] were not fully fleshed out by the government," the Government responds that such was not necessary. In its post-hearing brief, the Government emphasizes that the appropriate remedy for an improper identification is exclusion of the identification *at trial* and maintains that, given its representation to not use CS-1's identification, Defendant's motion is moot [Doc. 48]. The Government further asserts that any further relief requested by Defendant is unavailable because the identification of Defendant has no bearing on the existence of probable cause in the Affidavit.

The Court agrees with the Government that the proper remedy for an impermissible identification is the suppression of the identification from the evidence presented at trial. *United States v. Tijerina*, Case No. 3:06-cr-170, 2007 WL 3181291 at **1 & 4 (E.D. Tenn. Oct. 29, 2007)

---

[4] In *Neil v. Biggers*, the Supreme Court identified factors relevant in determining whether an identification was unduly suggestive, such as the witness's opportunity to view the suspect during the crime, the witness's attentiveness, the accuracy of the witness's description of the suspect, and the time that elapsed between the crime and the identification. 409 U.S. 188, 199-200 (1972).

(adopting Report and Recommendation, making this finding, in its entirety); *see Carter*, 218 F.3d at 605 (discussing the analysis of degree of suggestiveness of an identification and the totality of the circumstances in determining whether due process requires exclusion of the identification). An unduly suggestive and unreliable identification violates a defendant's due process right to a fundamentally fair trial. *Perry v. New Hampshire*, 565 U.S. 228, 244, 248 (2012). In this regard, an unduly suggestive identification is not "automatically excluded," but, instead, "the trial judge must screen the evidence for reliability pretrial." *Id.* at 232. When potentially suggestive identification procedures are not the result of police malfeasance, the identification evidence will not be excluded. *Id.* at 241; *United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2013), *cert. denied Lewis v. United States*, 571 U.S. 1223 (2014). In cases in which the identification is not connected to bad behavior on the part of law enforcement, the reliability of the identification is tested through traditional methods such as "'vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.'" *Perry*, 565 U.S. at 233 (also mentioning "the presence of counsel at postindictment lineups"); *Watson*, 540 F. App'x at 515. Either remedy, exclusion of the identification or testing the identification by traditional methods, relates to the admissibility of the identification at trial.

Given the representation by counsel that the Government will not seek to use the circumstances of the identification at trial or attempt to elicit an in-court identification of Defendant from CS-1, the Court recommends that Defendant's motion to suppress relating to that identification be deemed moot.

Defendant argues that the issue of whether to suppress the identification is not moot, because the identification defeats the probable cause of the Affidavit. In asking the Court to strike

all information ostensibly flowing from CS-1's identification from the Affidavit offered in support of a search warrant, Defendant seeks to graft a due process remedy designed to secure a fundamentally fair trial onto the Fourth Amendment.

After review of the post-hearing briefs, the Court concludes that the type of additional relief sought by Defendant—striking any information relating to Defendant as provided by CS-1's identification from the Affidavit—is not available or appropriate. While Defendant argues that "[a]ny identification of [Defendant] based upon CS-1 should be found to be fruit of the poisonous tree," Defendant cites to no authority supporting this contention. "[T]he 'fruit of the poisonous tree' doctrine . . . bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Williams,* 615 F.3d 657, 668 (6th Cir. 2010) (quoting *United States v. Pearce,* 531 F.3d 374, 381 (6th Cir. 2008)). Here, the doctrine does not apply. While CS-1's identification of Defendant is referenced in the Affidavit, the fact that the identification procedure may have been suggestive has no bearing on the existence of probable cause in the Affidavit.

Affidavits in support of a search warrant carry a "presumption of validity." *Franks v. Delaware,* 438 U.S. 154, 171 (1978). In certain circumstances, a defendant may challenge the legitimacy of a search by attacking the truthfulness of the allegations made in the affidavit supporting the warrant application. *Id.* "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To merit a *Franks* hearing, "a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Id.* (quoting

11

*Franks*, 438 U.S. at 171). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.*

Here, Defendant is not requesting a *Franks* hearing to determine whether the statements in the Affidavit regarding CS-1's identification of Defendant were falsehoods, and if so, whether the statements were material to the state court judge's probable cause determination. Instead, Defendant appears to request that the Court bypass the *Franks* hearing and summarily strike all references to CS-1's identification from the Affidavit. In support of this request, Defendant attempts to rely on the investigatory notes of the May 28, 2021 controlled purchase [Exhibits 1 and 2] to argue that prior to CS-1's identification of Defendant based on the driver's license photo, law enforcement officers did not independently identify Defendant. Even assuming this to be true, any differences in the notes and the Affidavit do not signify that the information contained in the Affidavit is incorrect. Significantly, Defendant does not suggest that the statement in the Affidavit concerning CS-1's identification of Defendant is a knowing or intentional falsehood by TFO Wilson that is material to the probable cause determination for the search warrant. Thus, Defendant fails to make a prima facie showing that a *Franks* hearing is warranted.

Moreover, despite the presence of suggestive procedures, an identification may still be held sufficiently reliable under due process standards. Using evidence from a suggestive identification procedure does not violate the due process clause if the identification is reliable in spite of the procedure's suggestiveness. *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007); *see Gregory*, 444 F.3d at 747 (noting a single-photo identification on its own is not a per se constitutional violation); *see, e.g., Howard v. Bouchard*, 405 F.3d 459, 474 (6th Cir. 2005) (finding identification "sufficiently reliable to overcome any suggestive procedure") (collecting cases), *cert. denied,* 546 U.S. 1100 (2006). While the Court need not analyze the reliability of the identification in this

12

case, given that the Government will not seek to admit it at trial, the Court observes that setting forth the factual details of a purportedly suggestive identification procedure is certainly not the equivalent of providing deliberately false identification information in support of a search warrant application that could potentially vitiate a finding of probable cause. In other words, a suggestive identification is not the same as an intentionally false statement in a search warrant affidavit. On the current state of the record, Defendant's request to have the Court strike references to CS-1's identification of Defendant from the Affidavit is not properly before the Court.

Accordingly, the Court finds Defendant's fruit-of-the-poisonous-tree argument is unavailing and recommends that Defendant's Motion to Suppress Identification be denied as moot.

**B.     Suppression of Evidence Seized from Dutch Valley Residence**

Defendant asks to suppress all evidence seized pursuant to a state search warrant executed at the Dutch Valley residence in September 2021. He maintains that the Affidavit fails to establish a sufficient nexus between the residence and any illegal activity to provide probable cause that drugs, guns, or evidence of a crime would be at the residence. Defendant also seeks to suppress any incriminating statements as fruit of the poisonous tree. Additionally, Defendant argues that Affidavit is so bare bones that the officers' belief in its existence is objectively unreasonable, such that the good faith exception does not apply. Defendant, who was an overnight guest at the Dutch Valley residence in May 2021, asserts that the Affidavit in support of the search warrant fails to provide a substantial basis for probable because it was based on stale information.

In its consolidated response, the Government states that the search of the Dutch Valley residence was based on a duly authorized search warrant, containing probable cause. It notes that the supporting Affidavit contained sufficient and detailed facts supporting probable cause that drugs would be found at the residence. The Affidavit details three controlled buys, each of which

13

occurred immediately after one of the Defendants left the residence and drove down the street to the Rite Stop to conduct the transactions. The two confidential sources mentioned in the Affidavit identified the residence as containing heroin. The Government maintains that the Affidavit shows a pattern of drug trafficking activities with the residence being a critical part of the pattern, thereby demonstrating a nexus between the place to be searched and the items to be seized.

The Government further argues in its response that probable cause is not based on stale information, again noting that the Affidavit shows an ongoing pattern of drug trafficking. The pattern described in the Affidavit—leaving the residence, then driving down street to sell drugs— continued up until the day before the issuance of the September 15, 2021 search warrant. The pattern was provided by the confidential sources and corroborated by the officers, making it plain that the residence was used to store heroin.

### 1. Nexus

In order to be valid under the Fourth Amendment, a search warrant must be supported by probable cause. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008), *cert. denied*, 558 U.S. 844 (2009). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence will be found in a particular place." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (internal quotation marks omitted) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). An officer making application for a search warrant demonstrates probable cause "'when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.'" *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). Probable cause does not require an actual showing of criminal activity, but rather, only requires a probability or substantial chance of such activity. *Id.* When considering whether

14

a warrant is supported by probable cause, a court's review is limited to the four corners of the supporting affidavit. *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir.), *cert. denied,* 549 U.S. 976 (2006).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (*en banc*), *cert. denied*, 543 U.S. 851 (2004). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.*

Here, the four corners of the Affidavit established three controlled buys by CS-1 between May and September 2021, with each buy following the same pattern. In each instance, CS-1 placed a call to schedule the purchase of heroin, either from Defendant or Codefendant Elie, who then directed CS-1 to meet at the Rite Stop for the transaction. Following the call, Agents observed Defendant, in the May transaction, and Codefendant Elie, in the June and September transactions, exit the Dutch Valley residence and travel directly to the Rite Stop to meet with CS-1. After each controlled buy, CS-1 confirmed that the government funds were exchanged for a quantity of suspected heroin.

In addition, the Affidavit included information from another confidential source, CS-2, who advised TFO Wilson about the depletion of Defendant and Elie's heroin supply on September 10, 2021, and detailed that Elie would be traveling to Detroit to replenish the supply and then

returning to the Dutch Valley residence with the heroin on September 13, 2021. The Affidavit reflected that between September 10 and 13, no drug trafficking activity was observed at the Dutch Valley residence and that Elie's vehicle was absent from the residence during that time. On September 14, 2021, CS-2 advised TFO Wilson that Elie had returned from Detroit with a supply of heroin, and that afternoon, agents conducted surveillance of the Dutch Valley residence. There, they observed Elie exit the residence, travel to Rite Stop, and meet with two individuals, engaging in a pattern of behavior and activity consistent with the previous controlled-buy encounters at that location.

The instant Affidavit contains specific information indicating that evidence of a crime would be found at the Dutch Valley residence. According to the Affidavit, agents had conducted three controlled buys of suspected heroin, one from Defendant and two from Elie, and each time observed them exit the Dutch Valley residence and drive directly to the Rite Stop to conduct the sale. While Defendant argues that the Affidavit provides only a mere guess that evidence of drug trafficking would be found at the residence, the Court disagrees. Defendant emphasizes that drugs were never sold from the residence, that no ongoing surveillance occurred at the residence, and that he was seen going to and from the residence on only one occasion. However, the Court cannot consider these factors in isolation because probable cause turns on whether evidence of the crime would be found at that location, considering the totality of the circumstances. Because "[n]ot all search warrant affidavits include the same ingredients," a court uses a "totality-of-the-circumstances approach." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (quoting *United States v. Hines*, 885 F.3d 919, 921–22 (6th Cir. 2018)). In contrast, a "'divide-and-conquer approach is improper,'" because "'[a] factor viewed in isolation is often more 'readily susceptible to an innocent

explanation' than one viewed as part of a totality.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (analyzing probable cause for arrest)).

In conducting a totality-of-the-circumstances review, the Court finds there was sufficient information in the Affidavit describing Defendant and Elie's presence at and immediate exit from the Dutch Valley residence just before traveling to the Rite Stop to conduct the drug sales to support an inference that heroin was being stored at the Dutch Valley residence. *See, e.g.*, *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (concluding that evidence defendant traveled to his residence prior to narcotics sales supported inference he was storing narcotics at his residence); *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) ("[T]he instant affidavit describes an incident where law enforcement agents observed Defendant visiting his residence right before he traveled to the site of a drug sale. . . . This evidence, combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's illegal activities and his residence."). Additionally, the Court notes that TFO Wilson stated that based on his training and experience, drug traffickers keep contraband, currency, and records in secure and easily accessible locations, such as their residences [Doc. 43 at 7-12].

In summary, the totality of the circumstances, including information from confidential sources and observations of Defendant and Elie departing from the Dutch Valley residence just before the drug transactions, provides a nexus between the Dutch Valley residence and evidence of drug trafficking.

### 2. Staleness

Stale information may not form the basis of a probable cause finding. *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009), *cert. denied*, 562 U.S. 1053 (2010). "[W]hether

17

information contained in an affidavit is stale 'must be determined by the circumstances of each case'" and depends not upon an "arbitrary time limitation," but rather, upon the nature of the crime, the criminal, the place to be searched, and the evidence to be seized. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)), *cert. denied*, 525 U.S.1086 (1999). When information in an affidavit is determined to be stale, probable cause may be present if the stale information relates to protracted or continuous conduct. *Greene*, 250 F.3d at 481 ("Evidence of ongoing criminal activity will generally defeat a claim of staleness"). Moreover, probable cause may still be present where stale information is corroborated by more recent information. *See United States v. Ursery*, 109 F.3d 1129, 1133 (6th Cir. 1997); *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989). The following factors guide the Court's determination of whether information in an affidavit is stale: "'[T]he character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).'" *United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) (quoting *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003) and *Greene,* 250 F.3d at 480–81)).

In the present case, Defendant maintains that the Affidavit submitted in support of the search warrant fails to provide a substantial basis for probable cause because it was based on stale information. Defendant points to the information and timeline in the Affidavit, which details the controlled buy between CS-1 and Defendant on May 28, 2021, and the date of the search warrant application in September 2021. Defendant claims that the span of over one hundred days between these two events without any information of additional or continuous wrongdoing by Defendant

makes the information too stale to support probable cause. While acknowledging the Affidavit describes two other controlled purchases during that period, Defendant asserts those transactions did not involve him. He further argues with regard to the relevant factors that the character of the crime—drug trafficking—is fleeting; that, as the suspect, he was at best a nomadic overnight guest at the Dutch Valley residence; that narcotics are not enduring; and that the residence to be searched was not Defendant's home, but a forum of convenience.

The Government responds that the Affidavit supporting the search warrant contained sufficient and detailed facts supporting probable cause that drugs would be found at the Dutch Valley residence. It contends the Affidavit details three controlled buys, each of which occurred immediately after one of the Defendants left the residence and drove down the street to the Rite Stop to conduct the drug sale. The Government points out the Affidavit states that two confidential sources identified the residence as containing heroin. It maintains that the Affidavit shows a pattern of drug trafficking activities with the residence being a critical part of the pattern. The Government asserts that probable cause is not based on stale information, because the Affidavit demonstrates an ongoing pattern of drug trafficking. The pattern described in the Affidavit (leaving the residence, then driving down the street to sell drugs) continued up until the day before the warrant. The pattern was provided by the confidential sources and corroborated by the officers, making it plain that the residence was used to store heroin.

The Court finds Defendant's argument to be without merit as his activity cannot be viewed in isolation. It is true that the May controlled buy likely would have been stale if it were standing alone. S*ee Frechette*, 583 F.3d at 378 ("Information of … mobile, easily concealed, readily consumable, and highly incriminating narcotics could go quickly stale in the absence of information indicating an ongoing and continuing narcotics operation.") (quoting *United States v.*

*Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005). However, the May controlled purchase is not the sole information in the Affidavit, and stale information can be renewed when it is corroborated by more recent information. *See Henson*, 848 F.2d at 1381–82 (finding probable cause that documents would be in defendant's office due to "the continuous nature of the criminal conduct being investigated"); *see also Thomas*, 605 F.3d at 310 (finding that a confidential informant's eight-month-old tip that defendant was growing marijuana at his residence was refreshed by corroborating electricity usage records).

Here, information from the May controlled buy was renewed by more recent information, including the June 11 and September 1 controlled buys by CS-1. Additionally, the most recent information detailing the depletion and replenishment of the Defendants' heroin supply, followed by the agents' observations of continued drug dealing activity consistent the previous controlled purchases, was provided by CS-2 in the days immediately preceding the signing of the Affidavit. Thus, although the controlled buy with Defendant took place in May, the criminal activity continued to be refreshed up until the September search warrant application. Under the Fourth Amendment, "search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny." *Thomas*, 605 F.3d at 307. In the instant case, although the nature of the evidence sought is not intrinsically likely to remain at the location where it was originally observed, the nature of the drug trafficking activity alleged in the Affidavit presents a fair probability that an ongoing operation was involved.

Moreover, the Court disagrees with Defendant's characterization of the four factors relevant to staleness. The Affidavit shows the character of the crime to be a regenerating conspiracy with drug transactions occurring over three and one-half months. Although Defendant describes himself as nomadic, the Affidavit reflects that he and Elie were consistently operating

out of the Dutch Valley residence over the course of the investigation. The Court agrees that heroin is perishable and easily transferrable; however, CS-2 states that Defendants procured a new shipment of heroin in the days immediately preceding the application for the search warrant. Finally, the pattern of activity discussed above shows the Dutch Valley residence to be the secure operational base of this DTO. Thus, the factors support a finding that the information in the Affidavit is not stale.

Accordingly, the Court concludes that under the totality of the circumstances the Affidavit provides a substantial basis for the authorizing judge to have reasonably believed a search of the Dutch Valley residence would uncover evidence of wrongdoing. The fact that Defendant is alleged to have participated in a controlled buy in May 2021 does not vitiate the fair probability that a search of the residence in September would uncover contraband or evidence of a crime as the supporting information continued to be updated, demonstrating an ongoing pattern of drug trafficking activity.

### 3. The Good-Faith Exception

Finally, the Government maintains that officers reasonably relied upon the search warrant issued by a detached judge such that the good faith exception applies to preclude the suppression of evidence in this case. In *United States v. Leon*, 468 U.S. 897, 913 (1984), "the Supreme Court . . . recognized an exception to the exclusionary rule where 'the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid.'" *United States v. Watson*, 498 F.3d 429, 431 (6th Cir. 2007) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984)), *cert. denied*, 555 U.S. 829 (2008). The good-faith exception will not apply where "the affidavit is 'so lacking in [indicia of] probable cause as to render official belief in its existence entirely unreasonable'" or "where the

officer's reliance on the warrant was neither in good faith nor objectively reasonable." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 923). Here, the Court has determined that the information in the Affidavit in support of the search warrant for the Dutch Valley residence establishes probable cause for the issuance of the search warrant and, thus, the undersigned will not conduct an extensive good faith analysis. *See, e.g.*, *United States v. Wingate*, No. 16-CR-60-JMH, 2016 WL 5109517, at *4, n.3 (E.D. Ky. Sept. 20, 2016) (declining to consider the good faith exception because the 'independent source rule' preserved the evidence from exclusion).

Defendant argues that any reasonable officer would have realized that the Affidavit was wholly deficient in probable cause, because the only connection between Defendant and the Dutch Valley residence was his one recorded presence at the residence in May 2021, which information was stale by the date of the Affidavit in September and insufficient to formulate a nexus between the residence and drug activity. Defendant relies on *United States v. McPhearson*, which held a "'suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship' necessary to a finding of probable cause." 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985)). There, the court found the affidavit's statement that defendant was arrested for a non-drug offense and with crack cocaine on his person away from his residence failed to provide probable cause to search the residence. *Id.* Here, unlike in *McPhearson*, the Affidavit contains more than just Defendant's activity and connection to the Dutch Valley residence, standing alone.

In the instant case, the twenty-page Affidavit contains information on three controlled buys as well as statements from reliable confidential informants, which information was corroborated by the observations of TFO Wilson and other law enforcement officers. This is more than a "bare

bones affidavit" containing "only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]'" *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). Accordingly, the Court finds the executing officers' reliance on the Affidavit and the search warrant issued by the judge was objectively reasonable. If the District Judge disagrees with the above analysis and finds probable cause lacking, the undersigned finds that the good faith exception to the exclusionary rule should apply in this case.

### III. CONCLUSION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that Defendant Dartavia Devon Smith-Wilson's Motion to Suppress Identification [**Doc. 35**] be **DENIED AS MOOT** and that his Motions to Suppress [**Docs. 36 & 37**] be **DENIED**.[5]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).